Peelee, Ch. «J.,
delivered the opinion of the court:
The claimant company, by a written contract with the Government under date of May 24, 1905, obligated itself to furnish all appliances, material, and labor necessary therefor and to build 100 feet of Chanoine dam, certain bear-trap foundations, a Chanoine weir, three piers and abutment, etc., at Dam No. 3, Ohio River, below Pittsburg, the work to be completed on or before October 31, 1906.
The work was not completed within the contract time, but the claimant was permitted to continue and the work was otherwise completed according to the specifications and paid for.
A subsequent contract, however, entered into July 28,1905, between the same parties for two bear-trap gates in connection with said work was extended for a reasonable time, and the work thereunder had to be completed before the work under said first contract could be completed.
While the work was thus in progress, by permission of the Government under the first contract-, but during the period of extension under the second contract, the engineer officer *552 in charge of the work, on behalf of the Government, commenced the raising of 20 wickets in the river bed on a part of the dam not covered by the claimant’s contract, the purpose being to use said wickets in the formation of a cofferdam which the Government desired to build around a leak in the air pipe designed to mechanically raise and lower said wickets and thereby pump out the water within the cofferdam and expose the broken pipe.
That part of the cofferdam formed by said wickets extended about 90 feet transversely across the river and was within 90 feet of the cofferdam of the claimant.
The claimant company, through its president, protested to the engineer officer aginst the raising of said wickets on account of the uncertainty of the rise of the water in the river; that if a rise should come when the wickets were up it would force the current against the cofferdam with such speed and force as to undermine and injure or destroy it. A similar protest previously made by the claimant company against the raising of said wickets had been respected and the wickets were not raised, but on this occasion the engineer insisted upon going ahead and' raising the wickets in order to repair said broken pipe. The president of said claimant company thereupon notified the engineer officer that if any damage was done to the cofferdam of the claimant it should hold the Government liable therefor.
The wickets were raised October 18, 1907, and continued raised until November 14, 1907, when it was discovered that by reason thereof the cofferdam of the claimant had been undermined by the current and force of the water during the rise and about 80 feet of the up-and-down stream arm, about 50 feet of the lower arm of the cofferdam, the top timbers or ties, and some sheeting had been washed away and the filling largely washed out of the cofferdam, and a hole scoured near the lower corner of the cofferdam to a depth of about 10 feet below the original depth of the river at said point, all without fault on the part of the claimant company, by reason of which it was required to and did repair the cofferdam, as set forth in the findings, at an extra cost to it of $1,895. Hence this action.
*553 The claimant’s theory and contention is that the damage caused by the raising of the wickets was an improper interference with its work, and in support of its contention cites the cases of United States v. Smith (94 U. S., 214, 217), Houston Construction Co. v. United States (38 C. Cls. R., 724, 736), and other cases therein cited. In the latter case the court, following the decisions of the Supreme Court, said:
“ It is well settled that for any improper interference with the work of a contractor the United States, like individuals, are liable.” (United States v. Speed, 8 Wall., 77, 84; United States v. Smith, supra, and 7 Hill (N. Y.), 62.)
Hence, if the damage resulting from the raising of the wickets was an improper interference with the work of the claimant, the breach would entitle it to recover. But in the cases above cited, as well as those referred to by the claimant, there was a suspension or stoppage of the particular work of the contractor, neither of which occurred in the present case. Here the time of completion was prolonged, not by reason of the suspension or stoppage of the work, nor yet by any changes in the plan of construction, but because of the extra work made necessary by reason of-the damage resulting from the raising of the wickets.
There is no controversy but that the officer of the Government in charge of the work had the lawful right to raise the wickets in the necessary prosecution of the work under his charge in the'improvement of the navigation of the river; and that if in that lawful act private property of the claimant company was taken or destroyed as the proximate result thereof, the law would imply a contract to make compensation therefor under the fifth amendment of the Constitution. (Manigault v. Springs, 199 U. S., 473-484.) But if we were to assume that the claimant had a property right in the work he had performed to the extent of his contract, would that right extend to a claim for damages arising from some lawful act of the officer outside the contract ?
In other words, would the damages thus resulting be a breach of the contract; and if so, upon what theory ? Had the engineer in charge suspended or stopped the work, thereby preventing performance on the part of the con *554 tractor, or bad he so hindered the contractor in his performance as to increase the cost to him, the Government would clearly be liable. Here, it is true, the work was hindered by the lawful act of the officer of the Government in raising the wickets, and while the raising of the wickets was in no way connected with the claimant’s contract or work, the immediate and proximate result was the damage to the claimant’s cofferdam, the repair of which cost him the sum found. The claimant was in no way at fault. Whether he could have protected himself against the damage done by depositing stone is by no means clear, and besides the cost of stone and labor which would have been required might have equaled or exceeded the damage done. The second contract (July 28, 1905) for the bear-trap gates operated to extend the time of completion under the first contract, as under the second contract, which had been extended, the work had to be completed before the first contract sued upon could be completed. Hence the claimant company is at no disadvantage on that account.
The assumption of responsibility by the claimant under specification 44, for the safety of his employees, plant and materials, and for any damage or injury done by or to them from any source or cause, was not intended by the parties to include damage or injury resulting from the acts of the officers and agents of the United States, nor can the specifications be so construed.
Whether the claimant company had procured and deposited the stone necessary to protect or assist in protecting its cofferdam from so washing or repaired the damage, as it did, the work was extra and outside the. contract, made necessary by the lawful act of the officer charged with the execution of the contract, and, having been accepted by the proper officers of the Government, the claimant is entitled to recover on quantum meruit, if not on the basis of a taking under the fifth amendment of the Constitution. Upon either theory of the case the facts are sufficiently pleaded as ruled in Clark v. United States (95 U. S., 539-543), where in this respect it was said:
“ If objected that the petition contains no count upon an implied contract for quantum meruit, it may be answered *555 that the form of the pleadings in the Court of Claims are not of so strict a character as to preclude the claimant from recovering what is justly due him upon the facts stated in his petition, although due in a different aspect from that in which his demand is conceived.”
The conclusion we have reached is certainly just and fully supported by the findings and as well by the law applicable thereto. As between individuals there would be no controversy as to the claimant’s right to recover. We must, therefore, hold that the claimant is entitled to recover judgment against the United States for the actual cost of the repair, in the sum of $1,895, which is accordingly ordered.
Howry, J., was not present when this case was tried, and took no part in its decision.