J ones, Judge,
delivered the opinion of the court:
Plaintiff under contract furnished the material and performed the work required for installing an electrical distri *178 bution system in the State Department building in Washington, D. C. The contract was dated June 1, 1939. The time allowed for completion was 270 days from the date of receipt of notice to proceed, which was received on June 13, 1939, thus fixing March 9, 1940, as the date for completion. The contract price was $93,230. Liquidated damages in the sum of $50 per day were stipulated for each day of delay in completing the work as scheduled. The work was not completed until August 10, 1940, but by virtue of extensions granted by the defendant, no liquidated damages were •assessed.
The object of the work was a change-over from the old direct current to a new alternating-current electrical system.
The contract provided that the work be done during regular working hours of regular working days while the building was occupied and with a minimum of noise and as little as possible interference with the work of the occupants of the building, and that the electric service should be maintained in the building during the operations.
Soon after the work began the activities of the State Department were considerably increased, several presidential secretaries and their office help were installed in the building, the Director of the Budget established offices in the building, a number of extra partitions were erected and floors were sanded and polished.
Plaintiff claims that these increased activities and changes in the building caused extra work and interfered with the regular sequence of operations, delayed completion and in numerous ways added to the expense of installation. For these various items of extra costs the plaintiff sues.
The main switchboard was located in the basement. From this board feeders ran to about 99 panelboards, each panel-board serving to distribute energy to several branch circuits which supplied lighting and other fixtures in areas of a few rooms to each circuit. The panelboard wires were enclosed in flexible conduits run through the subbasement to flues in the interior walls of the building and thus to the various floors.
Under the contract 16 new conduits of rigid construction were to be run from the new main switchboard in the sub *179 basement to tlie lower ends of 16 flues and thence vertically through such flues to the various floors of the building. On each floor the conduit was to be connected with a panel box. There were to be 88 panel boxes in the entire new system. When the new alternating-current system had been installed and was in operation, the wire, conduits, panelboards and main switch of the old direct-current system were to be removed from the building.
The contract provided that plaintiff should submit in writing to the contracting officer a program of construction. This was not done. Plaintiff had intended to pursue -the usual, orderly, and economical sequence of work in the changeover from direct current to alternating current. However, when its president orally informed the chief of the Survey and Construction Division what its plans were, he was directed to confer with Mr. Barr, defendant’s electrical engineer, and with Mr. Thompkins, defendant’s engineer in direct charge of the job. These engineers advised plaintiff that his proposed plan of operation could not be used since changes were contemplated, among other things in the panelboards, in the feeder conduit system, and in the main switchboard. Plaintiff protested on the ground that these changes would upset his plans.
After considerable discussion five classes of changes were agreed to affecting the main lighting switchboard, the feeder cables and conduits and some of the panelboards. These were embodied in change' order No. 1. These conversations and the subsequent change order made the submission of a formal written program of operations unnecessary.
Except in connection with the 16 flues the amount of labor and material required for the temporary wiring as actually performed was not substantially greater than it would have been under the program planned by, the plaintiff. As to the 16 flues, plaintiff’s plan could not have been effectuated even though it had been pursued. There was not room enough in the flues to permit installation of the rigid conduits of the new system and at the same time leave the old «direct current wires and conduits intact in the flues. In any event, the plaintiff would have been obliged to do a sub *180 stantial amount of temporary wiring to make up for the loss of the old supply through these flues. It is not proved that the additional cost in providing the temporary wiring exceeded the amount it would have cost under plaintiff’s original program.
A large part of the work consisted of installing the branch circuits. This included the removal of the old direct current wiring and conduits in the separate rooms and halls and installing the new wires and conduits for alternating current.
At the time of the making of the contract the building was normally occupied and the activities were the normal activities of the State and War Departments. Soon thereafter some of the rooms were made available by the defendant to new presidential secretaries and to the Director of the Budget. Also the activities of the State Department were tremendously increased by the spread of the war in Europe. Because of these increased activities defendant required plaintiff to switch its work from place to place and to do it piecemeal, as well as to switch from floor to floor. The plaintiff claims damages for the increased costs occasioned in this manner.
Under the contract plaintiff was to proceed while the activities of the State Department were being carried on. In view of the plain provisions of the contract and specifications plaintiff is not entitled to charge the defendant with the result of the increase of the activities of the State Department as such.
We do feel, however, that plaintiff has a right to complain of the installing of outside activities like presidential secretaries and their office forces, as well as the activities of the Bureau of the Budget. These were not activities of the State Department. Plaintiff had no notice of this contemplated use of the building by outside activities and the extra expense which the added crowding of an already over-crowded building would cause the plaintiff.
Unfortunately for plaintiff, it lumped all these claims in one batch. It offered no proof whatever as to the added labor or other extra costs which these extradepartmental activities had occasioned. If it had offered any reasonable proof, or *181 any evidence on the basis of which a reasonable estimate could be made, we would be inclined to allow it compensation for such extra costs, but since they are all lumped together and no effort whatever was made to link such activities to any item of increased costs, and since there is no evidence on the basis of which any reasonable estimate can be made, any effort on the part of the court to make an allowance would he pure guesswork, which certainly cannot form the foundation for recovery.
In installing the new system it was necessary to cut into masonry walls of the building in order to install pull boxes, panel boxes, and certain conduits. Eecesses for some 88 panel boxes 40 inches long, 30 inches wide, and 4 inches deep had to be cut. This was done with power hammers which caused considerable noise. Defendant required plaintiff to confine such work to the period betwen 7:30 and 9 a. m. The limitation on cutting time reduced the output of actual performance and caused a substantial amount of unproductive labor in changing work and locations. In view of the plain provisions of Sections 32 and 33 of the specifications in reference to the noninterference with the work of the State Department employees and the provision for a minimum of noise, we do not think the requirement that this work be done during limited hours was unreasonable.
During the period of plaintiff’s operations and prior to the installation of the branch circuiting, the defendant erected some 38 partitions in 29 of the rooms to be wired, which partitions were not shown on the contract drawings or included in the contract specifications. These partitions obstructed plaintiff’s work and necessitated the cutting of extra holes and the erection of additional scaffolding. Certainly plaintiff should not be required to bear the additional cost thus occasioned. The proof shows the extra labor amounted to $432, which plaintiff is entitled to recover. Williams Engineering & Contracting Co. v. The United States, 55 C. Cls. 349, 377; Ohio River Contract Co. v. The United States, 45 C. Cls. 542.
During the period of plaintiff’s operations and prior to the installing of a portion of the branch circuit wiring and the *182 cutting of walls in connection therewith, defendant sanded and polished the floors in 70 rooms which were not freshly-sanded and polished at the time of plaintiff’s inspection. Such sanding and polishing necessitated extra care in the use of drop cloths to catch debris from the cutting and in preventing damage from the fall of brick and other material on the floor. It increased the hazard to workmen using ladders and necessitated the help of an extra workman to hold each ladder while in use.
We can find no possible excuse for the defendant’s proceeding in advance with work of this character and thus adding to the hazards, expense, and costs of operation which the plaintiff thus incurred. The proof shows that the extra labor thus caused amounted to the sum of $882, which plaintiff is entitled to recover.
Most of the items of plaintiff’s various claims were embodied in a letter to the contracting officer dated May 18,1940, in which it made a review of the matters complained of and of its earlier request for an extension of time. On July 80, 1940, the contracting officer informed plaintiff of the appointment of a board to consider these claims. The board met on August 6,1940, and recommended that extensions of time be granted and that all claims for liquidated damages be waived. Other than correcting an error of $450, however, the board found that the evidence submitted did not warrant giving consideration to additional compensation. After some correspondence with officials of the Public Buildings Administration, the matter was referred to the General Accounting Office which allowed an item not here involved, and remitted liquidated damages, but denied the claim for increased costs of operation.
All in all, plaintiff performed its contract under very difficult circumstances. Some of the problems it faced were due to circumstances which it could not reasonably have foreseen. On the other hand, they are matters for which the defendant was in no way responsible. The wording of the contract and the specifications places the burden caused by these developments upon the plaintiff who had the obligation to perform the work. At any rate, they are added burdens for which the plaintiff has not the right to recover from the defendant.
*183 We do feel, however, that the defendant was at fault in placing the extra difficulties at the feet of plaintiff by installing presidential secretaries and budget officials in an already crowded department building without making some provision for giving plaintiff extra compensation for the added work and difficulties thus placed on its shoulders. If the plaintiff had made any reasonable effort to give the court satisfactory grounds upon which to base a finding of the amount of such extra costs these items would have been allowed. .In view of this failure of proof on the part of plaintiff, the only items we are justified in allowing are the items we have found, which are clearly linked to affirmative action on the part of the defendant that directly interferred with plaintiff’s operations, and which clearly caused it increased expense.
The plaintiff is entitled to recover the sum of $1,314. It is so ordered.
Whitaker, Judge; Littleton, Judge/ and Whaley, Chief Justice, concur. .
Madden, Judge, took no part in the decision of this case.